IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH O'SHAUGHNESSY, MICHAEL O'SHAUGHNESSY, and RANDALL L. HENSLEY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:13-cv-0947-DGK |
| CYPRESS MEDIA, L.L.C., | ) ) | |
| Defendant. | ) ) | |

## ORDER GRANTING IN PART MOTION FOR SANCTIONS

This lawsuit arises from Plaintiffs' allegations that Defendant Cypress Media, L.L.C. ("Cypress"), unlawfully "double-billed" them for newspaper subscriptions. Plaintiffs brought this case as a class action, and the Court subsequently denied Plaintiffs' motion for class certification.

Now before the Court is Plaintiffs' Motion to Strike Defendant's Motion for Summary Judgment (Doc. 138). Plaintiffs argue that Cypress violated Federal Rules of Civil Procedure 26 and 37 by failing to disclosing seventy-five documents until three weeks after the close of discovery, and that this late disclosure prejudiced them by causing the Court to deny class certification. Plaintiffs ask the Court to strike Cypress's summary judgment motion and impose unspecified additional sanctions. Plaintiffs have also filed a renewed motion for class certification (Doc. 141) based on the new documents.

Cypress responds that the November 2015 production was primarily a supplemental production, the disclosure did not violate any discovery rule or order, and Plaintiffs were not prejudiced.

The motion is GRANTED IN PART. The Court holds that some of these documents were untimely disclosed in violation of Rule 26, but only the late disclosure of the subscription invoice/renewal form templates prejudiced Plaintiffs, and this prejudice was relatively mild. Nothing in these late-disclosed documents alters the Court's class certification ruling or otherwise justifies granting Plaintiffs the drastic relief they seek. That said, the late disclosure of the subscription invoice/renewal form templates violated Rule 37, and so the Court orders Cypress to pay the reasonable expenses, including attorney's fees, caused by the violation. The Court will determine the exact amount of this sanction after the parties have briefed the issue.

**Standard**

Among other things, Federal Rule of Civil Procedure 26 requires a party, "without awaiting a discovery request, [to] provide to the other parties: (ii) a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to supports its claims or defenses."[1] Fed. R. Civ. P. 26(a)(1)(A). It also requires a party who has responded to an interrogatory or request for production to supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A). By signing a disclosure or discovery response, the signing attorney "certifies that to the best of the person's knowledge, information, and belief formed after a

---

[1] As for the timing of these disclosures, Local Rule 26.1(a) provides that a party's initial disclosures must be made no later than fourteen days after the parties' Rule 26(f) scheduling conference. It also warns that "[c]ounsel who fail to investigate their actions and who fail to make the initial disclosures as provided by these Rules may be subject themselves to sanctions."

2

Case 4:13-cv-00947-DGK   Document 157   Filed 08/24/16   Page 2 of 20

reasonable inquiry," the disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A).

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

Rule 37 also provides an enforcement mechanism for violations of Rule 26(a) or (e):

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees caused by the failure;
>
> . . .
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis added).[2]

Where there is a Rule 37 violation, the burden is on the potentially sanctioned party to prove harmlessness or justification. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). A district court enjoys wide discretion to fashion a remedy or sanction

---

[2] Plaintiffs also observe that the Court may also impose sanctions if a party "properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). This rule is inapplicable here because there is no dispute that Cypress served answers, objections, and written responses to Plaintiffs; the question is whether the answers and responses were complete—a question addressed under Rule 37(c)(1).

appropriate for the circumstances. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In so doing, the court considers the reason for the noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony. *Id.* The court's discretion, however, narrows as the effective severity of the sanction increases. *Id.* Exclusion of evidence is a harsh penalty that should be used sparingly. *Id.*

## Background

On February 6, 2014, Plaintiffs served their initial discovery on Cypress, including their First Request for Production of Documents, Electronically Stored Information, and Tangible Things ("RFP"), as well as their First Interrogatories ("Interrogatories"). Relevant to the present dispute, Plaintiffs' RFP sought the following documents from January 1, 2008, to the present:

> 2. All written agreements for subscription newspaper service . . . .
>
> 3. All documents which relate in any manner to any written agreement for subscription newspaper service . . . .
>
> 4. All Subscription Invoice and Subscription Renewal documents, or any other similar form document . . . .
>
> . . .
>
> 9. All documents, written correspondence, e-mail correspondence, or any other form of communication sent to you by, or by you . . . including . . . records of telephone calls, emails, or internet communications. . . .
>
> . . .
>
> 16. All documents which you contend provided any type of notice . . . regarding your billing practices, including . . . any notice which has appeared on . . . Subscription Invoice forms or any similar document, Subscription Renewal forms, and/or in any of Defendant's newspapers . . . .

4

. . .

> 18. All documents which you contend provided any type of notice . . . regarding any amount charged to your customers for "Special Editions," "Premium Editions," or similar editions of your newspapers.

Plaintiffs' Interrogatories asked Cypress to identify all documents in the same time frame which:

> 9. . . . reflect the "Begin Date" and/or the end date (sometimes referred to as a "Pays To" date) of your . . . initial Subscription Period and any subsequent Renewal Subscription Period . . .
>
> . . .
>
> 21. . . . reflect or refer to the assessment of a fee or charge . . . for Subscription Services . . . .
>
> . . .
>
> 23. . . . reflect or otherwise relate to your reimbursement, adjustment or credit of a fee or charge . . . related to Defendant's Subscription Billing Practice.

In August 2014, after multiple discovery disputes which required the Court's intervention to resolve, Cypress produced many documents responsive to Plaintiffs' requests. Among these were sixty-five subscription invoices sent to Plaintiffs, four publisher's notices, and four screen snapshots from *The Kansas City Star*'s ("*The Star*") accounting database showing transactions and events related to the Plaintiffs' accounts. On September 5, 2014, discovery into class certification issues closed.

On July 13, 2015, the Court denied Plaintiffs' motion for class certification, finding Plaintiffs had not demonstrated that there were questions of law or fact common to the class, or that common questions of law or fact predominated over questions affecting individual members. Order (Doc. 115) at 1.

5

Case 4:13-cv-00947-DGK   Document 157   Filed 08/24/16   Page 5 of 20

On October 30, 2015, merits discovery closed.

Three weeks later, on November 24, 2015, Cypress produced seventy-five documents to Plaintiff, Bates labelled Cypress_011991 to 012065, which had not previously been disclosed. The documents produced that are relevant to the pending motion are:

* Twenty-two pages of subscription invoice/renewal form templates which Cypress identified in this production as "invoice templates"[3] which appear to have been used at different times from 2009 to 2014.

* Nineteen subscription invoices *The Star* sent to the O'Shaughnessys between February, 2014, and April, 2015.[4]

* Two subscription invoices *The Star* sent Plaintiff Randy Hensley dated October 14, 2014, and November 8, 2014.[5]

* Five publisher's notices published in *The Star* between November 28, 2013, and May 1, 2015.[6]

* Ten computer screen snapshots from *The Star*'s accounting database showing transactions and events related to the Plaintiffs' accounts from January 2010 to the present.[7]

* Transcripts of two telephone conversations between Plaintiff Randy Hensley and a Cypress billing representative.[8]

---

[3] These documents are Bates labelled Cypress_012015 to 012036 and found in the record at Doc. 132-5.

[4] These documents are Bates labelled Cypress_011996 to 012014 and found in the record at Doc. 132-8.

[5] These documents are Bates labelled Cypress_011991 to 011992 and found in the record at two places, Docs. 132-2 and 132-9.

[6] These documents are Bates labelled Cypress_012037 to 012041 and are found in the record at Doc. 132-11.

[7] These documents are Bates labelled Cypress_012052 to 012061 and are found in the record at Doc. 132-1.

[8] These documents are Bates labelled Cypress_012049 to 012051 and Cypress_012042 to 012043. They are found in the record at Docs. 132-12 and 132-13, respectively.

Six days later, on November 30, 2015, Cypress filed its summary judgment motion. Cypress cited the newly disclosed documents in its Statement of Uncontroverted Material Facts ("Statement of Facts") (Doc. 132) accompanying its motion to dismiss.

## Discussion

Plaintiffs contend Cypress should have disclosed all of these documents much earlier, not six days before the summary judgment deadline. Cypress denies that it violated any rule or order by not producing them earlier.

The first section of this order discusses one category of documents, the subscription invoice/renewal form templates. The Court finds these documents were responsive to various discovery requests; Cypress did not comply with Rule 26; and Plaintiffs suffered mild prejudice as a result of their late disclosure. The second portion of the order briefly discusses the other documents and finds that, assuming without deciding that they were untimely disclosed, Plaintiffs were not prejudiced.

**I.     Cypress failed to disclose the subscription invoice/renewal form templates in its initials disclosures, their supplemental disclosure was untimely, and Plaintiffs were prejudiced.**

The Court begins with the twenty-two subscription invoice/renewal form templates. Unlike the production of most of the other documents at issue, such as the subscription invoices and publisher's notices, the November 24, 2015, production was the first time Cypress produced any subscription invoice/renewal form templates.

These templates are generic subscription invoice forms used by *The Star*. They contain blanks that need to be filled in with subscriber specific information, such as the subscriber's name, address, account summary, payment options, etc. They also contain some basic contract terms that would apply to all customers, such as a summary of the subscriber services provided

7

and dates when a paper may not be delivered. More importantly, these templates contain basic information relevant to Cypress's billing practices. For example, they disclose that rates for premium editions, such as the Thanksgiving Day paper, will be charged at a higher rate.

Plaintiff contends that Cypress should have produced the subscription invoice/renewal form templates in response to RFP numbers 2-4, 16, and 18, and Interrogatories 9 and 21. Cypress denies the invoice templates are responsive to these requests, and that in any event, subsequent discussions between the parties limited the requests to "exemplars." Cypress claims: It complied with Rule 26(a) and (e); the belated production is not a failure to provide discovery; Plaintiffs were not prejudiced by the belated production; and its failure to produce the templates was "unintentional and simply an oversight." Sugg. in Opp'n (Doc. 148) at 29.

### A. The templates were responsive to the RFPs and Interrogatories.

The Court holds that these templates are not responsive to RFP 2, 3, or 4, or Interrogatory 9.[9] The templates are, however, responsive to the other requests. RFP 16 sought "[a]ll documents which you contend provided any type of notice to your Subscription Customers regarding your billing practices, including . . . any notice which has appeared on Defendant's Subscription Invoice forms or any similar document." RFP 18 requested "[a]ll documents which you contend provided any type of notice to your Subscription Customers regarding any amount charged to your customers for 'Special Editions,' 'Premium Editions,' or similar editions of your newspapers." Similarly, Interrogatory 21 asked Cypress to "[i]dentify all internal documents or

---

[9] The invoice templates are not responsive to RFP 2, 3, or 4, or Interrogatory 9. They are not responsive to RFP 2, which seeks written agreements between Cypress and the Plaintiffs, because these forms are blank and do not identify any subscriber, much less any of the Plaintiffs. It is a closer call whether the invoice templates are responsive to RFP 3. The Court holds they are not because they do not relate to any written agreement between the Cypress and either Plaintiff because again, they do not identify any specific subscriber. Similarly, the invoice templates are not responsive to request RFP 4 because they were not sent to Plaintiffs; they are templates on which subsequent mailings were based. They are also not responsive to Interrogatory 9 because they do not identify begin dates or end dates for subscription periods. They do not provide this information because they are templates, and this information is subscriber-specific.

8

other information which would reflect or refer to the assessment of a fee or charge by you for Subscription Services, for the time frame from January 1, 2008 to the present."

The subscription invoice/renewal form templates are responsive because they provided notice of certain billing practices, such as charging more for premium editions. Indeed, Cypress argues as much in its summary judgment briefing. For example, it observes, "The Subscription Invoices *The Star* sent Plaintiffs explained . . . they would receive premium edition newspapers." Suggestions in Supp. at 14. Cypress also argues it cannot be liable for punitive damages because it did not act "with the requisite mental state in its transactions with Plaintiffs," since it "disclosed in the Subscription Invoices . . . that Plaintiffs would receive and would be charged for premium edition newspapers." *Id.* at 18. Further, Cypress's Statement of Facts cites to the subscription invoice/renewal form templates eighteen times, sometimes to support propositions that are contemplated in Plaintiffs' RFP and Interrogatories. *See, e.g.*, Statement of Facts ¶¶ 28 (noting the "Subscription Invoices *The Star* sent the O'Shaugnhessys identified certain dates on which all subscribers would receive newspapers as part of their subscriptions and explained there would be an additional charge for the Thanksgiving Day paper of up to $2.00."), 33 ("Each of the invoices . . . explained that in addition to their regular newspapers, subscribers would receive newspapers on other dates during 2012 and that 'Premium Editions, such as the Thanksgiving Day paper, will be charged at a higher rate, not to exceed an additional $2.00, plus applicable tax.'").

Cypress's claim that Plaintiffs subsequently allegedly agreed to limit their request to exemplars of various forms is unavailing.[10]

---

[10] The Court cannot tell from the record what, if any, agreement was made between the parties with respect to limiting production of any such responsive documents. There does not appear to have been a meeting of the minds about exactly what documents Cypress possessed or what the parties believed Cypress was agreeing to produce under any deal.

9

### B. Cypress did not comply with Rule 26.

The Court also rejects Cypress's claim that it did not have to produce the subscription invoice/renewal form templates under either Rule 26(a) or (e).

#### 1. Cypress did not comply with Rule 26(a) because the documents should have been disclosed in its initial disclosures.

Plaintiff argues Cypress should have disclosed the existence of the subscription invoice/renewal form templates in its Rule 26(a) initial disclosures, but did not.

Cypress does not deny that it was required to disclose these documents in its initial disclosures; on the contrary, it argues that it did. Cypress observes "one way a party can satisfy the duty to make initial disclosures of documents under Rule 26(a) is simply to make a list of the categories of documents that it may use to support its claims or defenses." Opp'n at 18. It cites *Schaffer v. Beringer*, No. 4:14-cv-04138-KES, 2014 WL 7181022, at *3 (D.S.D. Dec. 16, 2014) for support. Cypress contends it satisfied Rule 26(a) because it described these templates in its initial disclosures as "Subscriber services descriptions." It intimates this fairly categorized the templates because one of the many subheadings in them is titled "Subscriber Services."

A party can make initial disclosures by describing the documents by category and location. Fed. R. Civ. P. 26(a)(1)(A)(ii). As *Schaffer* also makes clear though, this listing must be accurate so that other parties can "make informed decisions about which documents they should request be produced" and "to enable them to frame document requests that will avoid squabbles about wording." *Schaffer*, 2014 WL 718102, at *3. A party cannot satisfy its Rule 26(a) obligations by listing a document with an opaque or misleading description. *See id.*

Cypress's claim that it fairly disclosed these documents by categorizing them as "subscriber services descriptions" is meritless. Calling these documents "subscriber services descriptions" does not come close to accurately describing them. The documents are

10

subscription invoice/renewal form templates, so Cypress should have called them something similar; a fair description would at least include the word "template." Cypress's argument is further undercut by the fact that it described these documents later in its Statement of Uncontroverted Material Facts as "invoice templates," and "templates that were used to create the Subscription Invoices that *The Star* sent subscribers between January 1, 2010 and the present." Doc. 132 at ¶¶ 8 n.2, 11. These are accurate descriptions; they should have been made in the initial disclosures. Given this record, the Court holds the description Cypress used in its initial disclosures was at best opaque. In any event, the description did not allow Plaintiffs to make an informed judgment about the documents' contents. Consequently, Cypress violated Rule 26(a).

### 2. Cypress did not comply with Rule 26(e) because the November 24, 2015, supplemental disclosure was not timely.

Cypress contends that, assuming for the sake of argument it should have disclosed the subscription invoice/renewal form templates earlier, it was not required to produce them in a supplemental response because Plaintiffs became aware of their existence during discovery. Cypress suggests Plaintiffs were aware of the templates' existence by no later than April 2014, as evidenced by the fact that Plaintiffs' counsel wrote on April 4, 2014: "We are aware that your client used several different Subscription Invoice and Subscription Renewal forms . . ." Cypress also notes that Ken Batrick, Vice President of Audience Development for *The Star*, testified during his deposition on August 28, 2014, that the first pages of Cypress's renewal invoices contain customer-specific information, and that the second page "is a template which is updated from time to time and it is not variable printed . . ."

The Court rejects Cypress's claim that Plaintiffs were "otherwise made known" of the templates. When read in context, the excerpt does not show that Plaintiffs were aware that

11

subscription invoice/renewal form templates existed. Rather, the letter suggests Plaintiffs knew that different subscription invoice and subscription renewal forms had been sent to different customers, and that Plaintiffs were willing to compromise on their initial discovery request and settle for the production of a sample of these forms—nothing more.

Similarly, the fact that Mr. Batrick said "template" in his deposition was not enough to alert Plaintiffs that Cypress possessed subscription invoice/renewal form templates it had not produced. The Court finds Plaintiffs could not have been expected to know of the subscription invoice/renewal form templates' existence until Cypress produced them on November 24, 2015.

Finally, the Court holds Cypress's supplemental production of these documents on November 24, 2015, was untimely. Waiting to produce documents that have been in a party's possession for several years until three weeks after the close of discovery and six days before the summary judgment deadline is an untimely disclosure. *See Harriman v. Hancock Cty.*, 627 F.3d 22 (1st Cir. 2010) (disclosing affidavits from recently discovered witnesses a month after the close of discovery and ten days before the summary judgment deadline is untimely); *Certain Underwriters at Lloyd's v. SSDD, LLC*, 301 F.R.D. 391, 395 (E.D. Mo. 2014) (disclosing witnesses four and a half months after the close of discovery is untimely).

Additionally, the Court is not convinced that Cypress's failure to produce these templates was "unintentional and simply an oversight." Nothing in the record supports this assertion, and it is inconsistent with Cypress's history of fighting discovery in this case tooth-and-nail.[11]

Accordingly, the Court holds Cypress violated Rule 26(e).

---

[11] The Court issued three discovery dispute orders in this case, which is a high number. The second order noted "Defendant has been slow to respond" to discovery requests. The third order concerned Cypress's objections to fifteen different requests for discovery. While the Court sustained most of these objections, it is a high number of objections requiring the Court's intervention to resolve, and it evidences the hard-fought nature of this litigation.

12

### 3. The Court finds no Rule 26(g) violation.

Finally, the Court notes that by signing a disclosure or discovery response, the signing attorney "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A). Therefore, Cypress's attorneys necessarily certified that the initial disclosures and subsequent responses they made were complete. The record is silent as to exactly why these documents were not disclosed earlier. Cypress has not provided any detailed explanation of what happened here or any affidavits supporting its explanation. The Court cannot tell when Cypress turned these documents over to its attorneys, or if defense counsel sincerely believed they did not have to disclose them, or if there was some clerical mix-up here that is responsible for the delay. Consequently, the Court cannot say defense counsel violated Rule 26(g) here.

### C. Plaintiffs were prejudiced, but not severely prejudiced, by the late disclosure.

Once the court determines there has been a violation of Rule 26(a) or (e), it can impose a wide range of sanctions unless the potentially sanctioned party proves justification or harmlessness. Fed. R. Civ. P. 37; *Roberts*, 325 F.3d at 782.

Plaintiffs complain that they were "extremely prejudiced" by Cypress's conduct. They argue that if they had been given access to the subscription invoice/renewal form templates, they could have shown that Cypress used a single standard-form contract, and the Court would have granted their motion for class certification.

Cypress responds that Plaintiffs' argument overlooks the fact that the templates were periodically revised, resulting in many different iterations of the templates—and thus different invoices—over time, all with different language. It notes Plaintiffs cited to multiple invoices

13

created from these templates in briefing its motion for class certification, thus Plaintiffs knew there was not a single standard from contract all along. Cypress also notes the Court's Order Denying Class Certification (Doc. 115) referenced the variety of these invoices in finding that the various subscription agreements were too dissimilar on which to base class-wide liability.

The Court's previous certification found, among other things,

> that there are no Standard Agreements[12] here which serve as common evidence on which to base class-wide liability determinations. Even within the same newspaper's stable of form agreements, the information provided about the newspaper's billing practices is so different that the forms are not "standard" in any way. For example, one alleged Standard Agreement submitted by Plaintiffs, a subscription order agreement used by the *KC Star* (Doc. 67-6 at 1), does not mention premium editions, higher rates, or paid-through dates at all. But other "Standard Agreements" used by the *KC Star*, various subscription renewal notices offered by Plaintiffs (Doc. 67-6 at 3, 5, 10), provide fairly detailed explanations of how much a subscriber will be charged for premium editions and when they will be published.
>
> . . .
>
> These disclosures—or in the case of the subscription order agreement above, the lack of such disclosure—goes to the heart of Plaintiffs' case, because the Billing Practice[13] may have been entirely legal if it was properly disclosed to the putative class members. The fact that two of the purported Standard Agreements from the same newspaper disclose materially different information concerning the alleged Billing Practice means they are not alike or "standard" for purposes of this case. Further, Plaintiffs have not suggested which potential class members may have received which Standard Agreements. Hence there is no way to establish liability

---

[12] As used in the class certification order, "Standard Agreements" is defined as typewritten, standard-form subscription agreements and subscription renewal agreements, or other materially similar written agreements with Cypress for newspaper services.

[13] The term "Billing Practice" mean Cypress's alleged practice of shortening customers' agreed upon and paid for subscription periods to pay down charges incurred by receiving "Premium Editions," "Special Editions," "Frequency Days," and "Bonus Days."

14

> on a class-wide basis, even among a subclass of subscribers to the *KC Star*.
>
> . . .
>
> Furthermore, given that the wording of these forms changed over time, and that customers used different forms to initiate and renew their subscriptions at different times, the fact-finder will have to sift through different documents for each subscriber to determine liability. As Cypress notes, a particular *KC Star* subscriber may have initially subscribed in response to a telemarketing call offering a special discounted rate, then continued her subscription under terms offered in a pre-March 2011 subscription renewal agreement, and then renewed her subscription again using a different renewal agreement. Thus there would be one set of facts relevant to her initial billing period; another set relevant to billing before March 2011, and a third set relevant to billing after March 2011. These facts would be different for *KC Star* subscribers who subscribed at different times or used different forms, and these facts would be different for *News-Democrat* and *Star-Telegram* subscribers as well. Moreover, Plaintiffs have not proposed any manageable way for the Court to potentially cleave off subclasses based on the receipt of certain forms at certain times. *See In re Paxil Litig.*, 212 F.R.D. [539, 546 (C.D. Cal. 2003)] (imposing on the plaintiffs the burden of defining the class). Hence, Plaintiffs fail to meet Rule 23(a)'s commonality requirement, and a class cannot be certified.

Order at 12-14.

The subscription invoice/renewal forms produced on November 24, 2015, do not change this conclusion. The forms show that invoices were generated with a template that changed over time. While this information is extremely useful in understanding exactly how and when the customer invoice/renewal form language changed, it is not "game changing" information. Regardless of exactly how and when this language changed, it changed substantially over time. Because subscribers who initiated and renewed their subscriptions at different times received

15

materially different information, a jury would have to sift through each subscribers' various documents to determine liability. Hence, there is no way to establish liability on a class-wide basis, even among a class (or subclasses) of subscribers to *The Star*, and Plaintiffs still cannot meet Rule 23(a)'s commonality requirement. The Court's earlier class certification ruling is unchanged.

Accordingly, Cypress has shown that the discovery violation was not extremely prejudicial to Plaintiffs, thus no sweeping sanction—like striking Cypress's summary judgment motion or excluding evidence—is justified.

Even so, Cypress has not carried its burden of showing that its failure to produce the subscription invoice/renewal forms earlier was harmless. On the contrary, the Court finds that by failing to disclose them earlier, Cypress prevented Plaintiffs' counsel from learning exactly how and when Cypress's subscription invoices/renewal forms changed, making their task more difficult and needlessly increasing the cost of litigation. Thus, Plaintiffs were prejudiced, and Rule 37 sanctions are appropriate. The Court orders Cypress to pay the reasonable expenses, including attorney's fees, caused by the violation. The Court will determine the exact amount of this sanction after the parties have briefed the issue.

## II. Plaintiffs were not prejudiced by the November disclosure of the other documents.

The Court now turns to the other documents Cypress produced to Plaintiffs in the November 24, 2015, production. The Court has shortened its analysis here because even assuming for the sake of argument that these documents should have been produced earlier, Plaintiffs have not been prejudiced by their late disclosure.

16

Case 4:13-cv-00947-DGK   Document 157   Filed 08/24/16   Page 16 of 20

### A. Plaintiffs were not prejudiced by the disclosure of the twenty-one invoices.

Plaintiffs contend that they twenty-one subscription invoices produced on November 24, 2015, should have been produced earlier in response to RFP numbers 2-4, 16, and 18, and Interrogatories 9 and 21, and that they have suffered unspecified prejudice as a result of the late disclosure.

After comparing the twenty-one invoices produced in November 2015 with the sixty-five other invoices previously produced, the Court finds there is nothing materially new in these invoices. They are the same type of documents just with different dates. Hence, Plaintiffs have not been prejudiced and sanctions are not warranted.

### B. Plaintiffs were not prejudiced by the November disclosure of four publishing notices.

The parties make similar arguments with respect to the four publishing notices contained in the November 24, 2015, production. Plaintiffs contend the documents are responsive to RFP 16 and 18, they were not timely produced, and then make a conclusory assertion that they have been prejudiced.

Cypress notes that it produced twenty-one similar publishing notices to Plaintiffs in August 2014. It argues its failure to provide these last four notices was an oversight which the supplemental production rectified. In any event, Plaintiffs have not been prejudiced.

After comparing the four publishing notices with those produced previously, the Court finds nothing new or notable in them, and that Plaintiffs have not suffered any prejudice by their late disclosure. Sanctions are not appropriate.

### C. Plaintiffs were not prejudiced by the November disclosure of ten screenshots from its accounting database concerning Plaintiffs' accounts.

Cypress's November 2015 production also included ten screenshots from its accounting database of Plaintiffs' accounts. Plaintiffs contend the documents are responsive to RFP 23, and that they suffered unspecified prejudice by the failure to produce them earlier.

Cypress responds that this is a supplemental production to four screenshots produced in August of 2014, and it denies that Plaintiffs have been prejudiced.

After comparing the November production with the August 2014 production, the Court notes that some of the newly produced screenshots are almost identical to those previously produced. The screenshots contain the same information, with non-remarkable updates. Plaintiffs have not been prejudiced.

### D. Plaintiffs were not prejudiced by the November disclosure of the recorded phone calls.

Finally, Plaintiffs complain that the transcripts of two recorded telephone conversations between Plaintiff Hensley and a Cypress representative should have been disclosed earlier in response to RFP 9, and that they have suffered unspecified prejudice.

Cypress contends that it was not required to produce the transcripts under Rule 26(a) because at the time it made these disclosures, it had not located the transcripts and thus did not have any intention of using them in support of its defense. It was only upon preparing the summary judgment motion that its counsel decided to use the transcripts, and then produced them. It denies the transcripts should have been produced earlier in response to RFP 9.

18

Although the transcripts should have been produced in response to RFP 9,[14] Plaintiffs have not demonstrated any prejudice. Although Plaintiffs make a conclusory assertion of prejudice, they have not identified any specific prejudice, nor can the Court see any. Mr. Hensley was doubtlessly aware that he had spoken with a Cypress representative on at least one occasion about his subscription; there is no dispute that the transcripts are accurate; and having the transcripts earlier would not have changed what Mr. Hensley said.

## Conclusion

The motion (Doc. 138) is GRANTED IN PART. The Court holds Cypress violated Rules 26(a) and (e) by failing to disclose the subscription invoice/renewal form templates until three weeks after the close of discovery. The delay prejudiced Plaintiffs by needlessly increasing their litigation costs and so violated Rule 37. The Court orders Cypress to pay the reasonable expenses, including attorney's fees, caused by this violation. The Court will determine the exact amount of this sanction after the parties have briefed the issue.

Plaintiffs shall file a short brief, not to exceed ten pages of argument, detailing the reasonable expenses they have incurred as a result of this violation. Plaintiffs shall attach to the brief all records, including detailed billing records, supporting their request. This brief shall be filed on or before September 7, 2016. Cypress shall have fourteen days to file a response, not to exceed ten pages of argument. If Cypress files a response, Plaintiffs shall have seven days to file a reply brief, not to exceed five pages of argument.

---

[14] RFP 9 sought all communications, including "records of telephone calls," from Cypress to Plaintiffs "related to [Cypress's] billing practices . . . from January 1, 2008 to the present." The purpose of Cypress's phone calls to Mr. Hensley was to notify him that there was a small amount due on his account and to get him to extend his subscription. Consequently, the call related to Cypress's billing practices.

The parties' briefs shall be limited to discussing the reasonable expenses Plaintiffs' incurred as a result of the Rule 37 violation identified in this order. The parties shall not re-litigate this order.

**IT IS SO ORDERED.**

Date:  August 24, 2016                             /s/ Greg Kays
                                                   GREG KAYS, CHIEF JUDGE
                                                   UNITED STATES DISTRICT COURT